(134 App. Div. 506.)

THOMSON v. BATCHELLER et al.

(Supreme Court, Appellate Division, First Department. November 19, 1909.)

1. SALES (§ 7*)—DISTINGUISHED FROM OTHER TRANSACTIONS.

An agreement between plaintiff's testator and defendants provided that, whereas testator had conducted a perfumery business in London and in this country for a number of years, and whereas defendants had agreed to purchase the part of the business carried on here, in consideration of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the premises testator did thereby sell, assign, transfer, and set over to defendants the business heretofore carried on in the United States, including the stock, formulas, etc., for which defendants agreed to pay the actual cost price of the stock on hand. The agreement further provided that, so long as defendants performed the contract, testator granted them the exclusive license in the United States to use all testator's trade-marks, enumerating them, in consideration of which defendants agreed to pay testator a royalty equal to 25 per cent. of the net profits of the business carried on by them, provided that, if defendants retired from business or the gross sales did not amount to a certain sum, testator could terminate the contract and resume the exclusive use of the trade-marks, when all of defendants' rights under the contract should cease. The agreement was executed, with the understanding that defendants would form a corporation to carry on the business, and that the contract should be assigned to it, which was subsequently done. *Held*, that the contract did not create a trusteeship, or any other fiduciary or agency relation, between testator and defendants, but was an absolute sale of the business and stock on hand and the grant of the use of certain trade-marks upon a fixed royalty, and defendants could manufacture and sell other toilet articles not included in the business sold to defendants, or covered by or infringing the trade-marks which defendants were licensed to use, without accounting to the corporation, and through it to testator, on the theory that the contract created a fiduciary relation between testator and defendants.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 16, 17; Dec. Dig. § 7.*]

2. PARTNERSHIP (§ 7*)—THE RELATION.

The agreement was not a partnership contract between testator and defendants; the provision fixing the royalty at an amount equal to 25 per cent. of the net profits merely providing a method of computing the royalty, and not being an agreement to share profits.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 20; Dec. Dig. § 7.*]

3. TRIAL (§ 159*)—DISMISSAL.

Where the trial court found that one of defendants was not liable, the complaint should have been dismissed as to it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 365; Dec. Dig. § 159.*]

Appeal from Special Term, New York County.

Action for an accounting by Charles E. Thomson, as executor of William S. Thomson, deceased, against George C. Batcheller and others. From an interlocutory judgment in part for plaintiff, certain defendants appeal. Reversed in part, and dismissed as against appellants.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Frederick W. Garvan (George C. Lay, of counsel, and Archibald Cox, on the brief), for plaintiff.

O'Brien, Boardman & Platt (Morgan J. O'Brien, of counsel), for defendant Batcheller Importing Co.

Frayer, Stotesbury & Gregg (Eugene Frayer, of counsel), for defendants Batcheller, Russell, Welch, and Crown Perfumery Co.

CLARKE, J. Plaintiff is the executor of William S. Thomson, who in his lifetime was engaged in London, England, in the production and

sale of perfumes, soaps, and toilet articles under the name of the Crown Perfumery Company of London, and was the owner of a large number of trade-marks, trade-names, and labels. He had extended his business to the United States. On or about July 1, 1899, Thomson employed the firm of Langdon, Batcheller & Co., composed of the defendants Batcheller, Russell, and Miller and one William H. Batcheller, which firm was carrying on the business of manufacturing and selling corsets, as his exclusive agents for the sale of his goods in the United States, and they acted as such selling agents until December 30, 1899. On July 17, 1899, said Thomson, by an instrument in writing, transferred his business as theretofore carried on in London and in Paris to his son and daughter. The defendants had no knowledge of this transfer until many years thereafter. He desired to dispose of his business in the United States, and after negotiations with the defendants Batcheller, Russell, and Miller, he entered into a written contract with them on the 30th day of December, 1899, with the understanding that the said defendants were to form a corporation for the purpose of carrying on said business, and that said contract should be assigned to said corporation; the contract providing that it should "inure to the benefit of and be binding upon the successors and assigns of the parties of the second part in their said business." The said defendants caused a corporation, the Crown Perfumery Company, to be organized under the laws of the state of New York; the certificate being filed in the office of the Secretary of State December 29, 1899, with a capital stock of $6,000. Five hundred dollars was subscribed by the three said defendants. They transferred to said corporation all their right, title, and interest in the contract with Thomson for the consideration of the remaining capital stock, amounting to $5,500, and each of the defendants received one-third portion of said stock. Thereafter Batcheller was elected director and president, Russell director and vice president, and Miller director and secretary. The defendant Welch was employed as manager of said corporation, and continued to act as such until January 26, 1906, when he was elected director and secretary in the place of the defendant Miller.

Upon the theory that under this agreement of December 30, 1899, the defendants entered into fiduciary relations with plaintiff's testator, this action has been brought to compel an accounting of all the business done by them in perfumes, soaps, and toilet articles, and to enjoin the use and sale of certain particular articles devised, manufactured, and sold by them long after the making of the said contract, and not bearing any of the trade-marks or trade-names theretofore owned by Thomson—the theory being that the three defendants, Batcheller, Russell, and Miller, and their assignee, the Crown Perfumery Company, by the purchase in the United States of the business of Thomson, including his stock in trade here, with the right to use for a license fee for a limited period certain enumerated trade-marks, trade-names, and labels, became Thomson's quasi partners, or trustees, or agents, or joint adventurers; that as such they were prohibited from dealing in any other articles within the same classification (that is, soaps, perfumeries, and toilet articles), of any name or nature whatsoever,

either bought from other sources or invented, manufactured, and devised by them, without accounting therefor to Thomson; that inasmuch as said defendants had formed a firm, the Batcheller Importing Company, which carried on a business in articles within the same general classification, as members of that firm they could be made to account to their corporation, the Crown Perfumery Company, for its business, and the Crown Perfumery Company could be made in turn to account over to Thomson; that is, although not a stockholder in the Crown Perfumery Company, plaintiff could make its unfaithful officers account to it, in order that said corporation might account to plaintiff. The plaintiff has succeeded in obtaining an interlocutory judgment upon his theory, compelling an accounting, but is not satisfied with the limitations thereof, and appeals from a part thereof. The defendants, other than Miller, appeal from that portion of the decree which requires an accounting to any extent.

The judgment appealed from can only be sustained upon a finding of the fundamental fact that the defendants did assume fiduciary relations to plaintiff's testator under the agreement of December 30, 1899. It therefore becomes necessary to analyze said agreement. If no fiduciary relationship was thereby created, there could be no breach of trust and no duty to account. The agreement provides:

"Whereas, the party of the first part has been for a number of years, and is now, carrying on business of the manufacture and sale of perfumery in said London and in the city of New York under the business name of the Crown Perfumery Company; and whereas, the said parties of the second part have agreed to purchase from the party of the first part so much of said business as has been and is carried on in the United States: Now, therefore, this agreement witnesseth that in consideration of the premises the said party of the first part has and does hereby sell, assign, transfer, and set over to the said party of the second part all the business heretofore carried on by him under the name of the Crown Perfumery Company in the United States of America, and all the property, not including accounts receivable, used in and belonging to said business, including stock on hand, show cards, labels, formulas, recipes for making perfumes, and other property used by him therein," for which the parties of the second part agreed "to pay in eight quarterly payments, without interest, to the said party of the first part, the actual cost price of the existing stock of the said party of the first part in the city of New York or elsewhere in the United States, reserving, however, the right to reject any labels now in stock not in actual use by the party of the first part in his business."

Under those provisions Thomson made to the Crown Perfumery Company, to which the individual defendants had assigned their rights under the contract, a bill of sale of the stock, and received therefor the sum of $15,961.38 from said company. These provisions, it seems to me, constituted an absolute sale of the business and the tangible property in the United States. It recited that the parties of the second part "have agreed to purchase," and that the party of the first part "has and does hereby sell, assign, transfer, and set over," "all the business" and "all the property, including stock on hand," etc., "and other property used by him therein." From that moment Thomson had parted with all his right, title, and interest therein. The defendants had acquired it, and under no possibility could that which had been so bought, paid for, and delivered revert to Thomson.

The contract further provided, and as it appears to me by an entirely independent clause:

"And so long as the parties of the second part shall abide by and perform the terms of this agreement, said party of the first part has and does hereby grant to the parties of the second part the exclusive license in the United States of America to use and employ in said business and to apply to the goods manufactured or sold by them therein all the trade-marks, trade-names, and labels heretofore used by the said party of the first part in his said business, and especially the trade-marks or trade-names" (enumerating a number), "and the word 'Crown' as applied to any and all other odors or perfumes. In consideration whereof, the said parties of the second part hereby agree to pay to the said party of the first part, his executors, administrators, or assigns, a royalty which shall be equal to 25 per cent. of all of the net profits of the said business so to be carried on by them, said amount to be paid semiannually on the 1st days of February and August in each year: Provided, however, that if at any time the said parties of the second part should retire from business, or in case the gross sales of said business as carried on by them does not reach the sum of $60,000 in any one year, then and in such case the said party of the first part * * * shall have the right to terminate this contract and to resume the exclusive use in the said territory of the said trade-marks, trade-names, and labels, and from thenceforth all rights granted to the said parties of the second part under this contract shall cease and determine."

The contract was subsequently modified by striking out the limit of $60,000 a year for five years, and after said period reducing said limit to $50,000. The contract uses for the transfer of the business and the property the appropriate legal words, "sell, assign, transfer, and set over." It uses the appropriate legal words, "grant exclusive license to use certain specified trade-marks, trade-names, and labels heretofore used by the party of the first part in his said business," and provides for a "royalty" for such use, and fixes said royalty at a sum equal to 25 per cent. of the net profits of the business so to be carried on by them. This contract certainly was not a contract of partnership, because, if so, Thomson would be liable for all the debts and obligations of the partnership. Nor do I believe that any quasi partnership, or fiduciary relation, or trusteeship, or agency, or joint venture, was thereby created. Outside of the absolute sale of the business and stock on hand, it was the granting of a use of certain trade-marks by way of a license upon a royalty fixed. It was not an agreement to share profits. No right, title, or interest in the profits as such was transferred; but the license fee was fixed at an amount "equal to" a certain share of the net profits.

Similar clauses in contracts in cases of employés and for the loan and use of money or property have been held many times in this state to provide a mere method of computation, and not to create a partnership, either as to third persons or inter sese. In Richardson v. Hughitt, 76 N. Y. 55, 32 Am. Rep. 267, after the citation of many cases, the court said:

"These cases fully sustain the doctrine laid down that, where the profits are a measure of compensation, no partnership is created"—followed in Currie v. Fowler, 87 N. Y. 33, 41 Am. Rep. 343; Cassidy v. Hall, 97 N. Y. 159.

The court has made findings which are irreconcilable, as it seems to me, with its conclusions that there should be an accounting. It has found that the business belonged to the defendants, that they had a

right to conduct it as they pleased, that Thomson had no right to dictate to it, that they were under no obligation to import anything from him, that they could advertise as they pleased, that they were not called upon to import any of his new manufactures, formulas, etc., and so on. The defendants have regularly accounted each six months, as provided by the agreement, for all the business done by the Crown Perfumery Company, and no question seems to be made in regard to those accounts, if the said defendants are not responsible to account to the plaintiff for the business done by the Batcheller Importing Company; that is, if the plaintiff's theory of fiduciary responsibility is not sustained.

The real controversy is over the production and sale of a bath powder known as "Bathasweet," and some other toilet articles of that name, which were put upon the market in the year 1903 by the defendants Batcheller, Russell, and Welch, acting together as partners in a firm called the Batcheller Importing Company. The claim is that they violated their duty as trustees, or quasi partners, or fiduciaries, in getting up a rival business, and violated the rights of the plaintiff in respect to his bath powder, called "Bathodora." The real purpose of this suit seems to be to get an accounting as to said Bathasweet products and an injunction against its further sale. The facts as to this bath powder are as follows:

Thomson, who had created the Crown trade-mark and the Crown Perfumery Company in London, had sold his European business, or transferred it to his children, in July preceding the date of this contract with the defendants. He had produced a high-class and high-priced grade of goods. He was proud of it, and wished to keep up the standard and the reputation. He never had produced or sold, up to the time of the making of this contract, any bath powder. In 1901, Welch, who was a salesman for the defendant company, and had been in the drug and perfume business all his life, suggested to the defendants Batcheller, Russell, and Miller that they produce and sell a line of cheap toilet articles and perfumery, etc., pointing out that they could be sold at the same time with the trade-marked goods; many druggists desiring the cheap as well as the higher priced. These three defendants discussed, considered, and rejected the proposal. In the first place, they did not believe it would succeed. In the second place, they thought that Thomson would not think it right, because of his continually expressed desire to keep up the standard and reputation of his goods. If they used the word "Crown" on these cheaper goods, they thought that he might very well object, and if the project was a failure, and there was a loss, his license fee from the profits of the business would be thereby diminished, and he would have a right to complain. It was then suggested that they take up this matter as an independent operation, and it was finally agreed that a partnership should be formed between the four, with a capital of $5,000, to which each should contribute $1,225, and undertake this cheaper line of goods. Miller, with full knowledge, agreed with the others; but, when it came to perfecting the arrangement, he said that he did not have the $1,225 to contribute, so he dropped out. The others pro-

ceeded on a capital of $3,675. They got out some cheap goods, castile soap, and other articles, which they named "Lady Peggy." This venture was a failure. There was a loss of $1,000 the second year. This venture did not go into the Thomson accounting, and so he did not share the loss. Then.Welch suggested a bath powder and devised the name "Bathasweet," which was sold at 25 cents. This powder dissolved very quickly and was a success. It was produced and sold. They subsequently made a rice toilet powder and one or two other toilet articles, to which they appended the same name. This was in 1903.

In 1901 Thomson's children and their chemists had been experimenting on a bath powder which they called "Bathodora," which cost 75 cents a package, and in which there was a pin crystal, which took a long time to dissolve, and they had been in correspondence with defendants and had sent over some samples. It is found as a fact that Thomson never had this powder, never knew anything about it, and that it never was in existence until long after the contract was made; that he had no trade-mark rights to Bathodora in this country; that Bathodora was never advertised nor sold in the United States prior to December 31, 1907; that Bathasweet was not the same as Bathodora; that numerous people made bath powders of different kinds; that Bathasweet was not made after the formula of Bathodora, nor did it contain any ingredient of Bathodora; that in no way did it infringe, in composition, formula, name, package, label, advertisements, or anything else. Bathasweet was a success, and some money was made out of it, and, on the plaintiff's theory that the business had not been sold, but only a sort of a use of it, which would revert to Thomson, he claims that the defendants were prevented from selling, or making, or disposing of, as individuals, as members of a firm, or as owners of stock in a corporation, anything in the line of soap, or perfumery, or the like, whether such goods came from abroad, or the name Crown was used, or whether they were similar to the Thomson goods or not; that their duty as fiduciaries prevented them from in any way getting into the same kind of business without thereby making themselves accountable for 25 per cent. of the profits so made.

The learned court has sustained this view to the extent of finding that the relations were fiduciary; that the defendants had no right to manufacture and sell perfumery and other articles, in the name of the Batcheller Importing Company, without accounting to the plaintiff; that the profits of the business conducted in the name of Batcheller Importing Company, and the sales of Bathasweet bath powder and other toilet articles, belonged and should be restored to the Crown Perfumery Company, and made subject to the provisions of the agreement; but that the plaintiff is not entitled to an injunction restraining the selling of bath powders, rice powders, or soaps under the name of "Bathasweet"—that is to say, that while the defendants must account for the profits made from the sale of the Bathasweet articles, their use and sale was not unlawful, and would not be enjoined.

The plaintiff is dissatisfied because the defendants were not required to assign to the plaintiff the trade-mark "Bathasweet," and

that an injunction to perpetually enjoin them from the use of said trade-mark was not granted, and because damages were not awarded against the defendants for impairing or destroying the value of and diverting the business of the original plaintiff and his successor, and the trade-marks used therein, by establishing a rival and competitive business, and by transferring, adopting, and using the trade-mark ·"Bathasweet." The defendants appeal from that portion of the interlocutory judgment which compels them to account at all.

When the court found that Bathodora was not in existence at the time of the original agreement, and therefore could not have been included in the trade-marks, the subject of ·the grant in said agreement; that it never at any time was owned by Thomson, the party of the first.part in said agreement; that Bathasweet was entirely a different article in ingredients, formula, and characteristics, and that neither its name, labels, packages, advertisements, or anything in relation thereto were in imitation or resemblance of Bathodora; and that no infringement whatever of any trade-mark or rights possessed by the owners of Bathodora, which had never been advertised or sold ·in the United States, existed—there was left no basis for the judgment rendered.

While an equity court will sustain the right of a cestui que trust to ·call his trustee to account whenever it finds that a fiduciary relation has been established, we are unable to find any established equitable doctrine which authorized the court to hold, upon the facts shown in this case and the terms of the agreement,.that the defendants· Batcheller, Russell, Miller, and Welch were prohibited from engaging in business in other articles not included in the business sold to the Crown Perfumery Company, nor covered by said trade-marks, nor infringing thereon, without accounting, at the suit of the plaintiff, to the defendant corporation, the Crown Perfumery Company, and thereafter through it to him. The defendants did not attempt to make the plaintiff share in the loss of their outside business; but he now seeks, when they had made that outside business profitable, to compel them to share those profits with him.

The learned and able counsel for the plaintiff in his ingenious brief has used the various terms which we have quoted of quasi partner, trustee, agent, and fiduciary, but has seemed to have had a difficulty in precisely defining the nature of the relation upon which he can fix the liability. We find the same difficulty. Our conclusion is, however, that the agreement contained a sale, with the vesting of absolute title to the business as then conducted and the stock in hand, with a grant of the use of certain trade-marks upon the payment of a license fee fixed at a sum equal to a proportionate share of the profits of the business sold, that the defendants have accounted for the license fee so provided for, and that the plaintiff has not made out a cause of action for any further or other accounting.

The ·judgment, in so far as it compels an accounting, should be reversed, the complaint should have been dismissed as against the Batcheller Importing Company, the corporation made a party defend-

ant, and as against whom no liability was found by the Special Term, and should be dismissed as against the defendants appellants upon the merits, with costs and disbursements. All concur.